UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TIM RYAN CONSTRUCTION, INC., <br><br> Plaintiff, <br><br> v. <br><br> BURLINGTON INSURANCE COMPANY, <br><br> Defendant. | CASE NO. C12-5770 BHS <br><br> ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff Tim Ryan Construction, Inc.'s ("TRC") partial motion for summary judgment (Dkt. 9). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On August 28, 2012, TRC filed a lawsuit against Defendant Burlington Insurance Company ("Burlington") alleging: (1) breach of contract by Burlington's refusal to defend TRC in an April 11, 2011 lawsuit filed against it; (2) that Burlington acted in bad faith and violated numerous provisions of the Insurance Fair Conduct Act ("IFCA"); and

ORDER - 1

(3) that Burlington committed violations of the Consumer Protection Act, Chapter 19.86 RCW. Dkt. 1 at 6-7. On October 8, 2012, Burlington filed an answer to TRC's complaint and a counterclaim seeking declaratory judgment that Burlington has no duty to defend TRC in the underlying April 11, 2011 lawsuit ("underlying lawsuit"), and that Burlington has no duty to indemnify TRC in the underlying lawsuit. Dkt. 8 at 6-7. It also seeks costs and disbursements incurred herein and any other relief the court deems just and equitable. *Id.* On October 18, 2012, TRC filed a motion for partial summary judgment. Dkt. 9. On October 22, 2012, TRC filed an answer to Burlington's answer and counterclaim. Dkt. 10. On November 5, 2012, Burlington filed a response to TRC's motion for partial summary judgment. Dkt. 15. On November 9, 2012, TRC filed a reply to Burlington's response. Dkt. 18.

## II.     FACTUAL BACKGROUND

Burlington is an insurance company incorporated in North Carolina and authorized to conduct business in Washington. Dkts. 1 at 2 & 8 at 1. TRC is a general contractor for the construction of a commercial building located at 555 Pacific Avenue, Bremerton, Washington (the "Project"). Dkt. 1 at 3. TRC retained various contractors, including Sound Glass Sales, Inc. ("Sound Glass") to work on the Project. Dkt. 1 at 3 & 8 at 2. Burlington issued Commercial General Liability policies to Sound Glass between May 1, 2007 and May 1, 2011. Dkts. 1 at 2 & 8 at 1. The policies issued to Sound Glass had "Additional Insured" endorsements. Dkt. 16 at 3. It is undisputed that TRC is covered as an additional insured under Burlington's policies with Sound Glass. TRC tendered

defense to Burlington (Dkt. 1) in connection with an April 20, 2011[1] lawsuit (the underlying lawsuit) filed by the owner of the Project against TRC in Kitsap County.  Dkt. 1 at 3. The action is captioned *Tim Ryan Properties, L.P. v. Tim Ryan Construction, Inc*., No. 11-2-00870-5. *Id.* This action arose from defective construction of the property that was also the subject of a 2010 Complaint filed against TRC.  Dkt. 16 at 2-3. *See supra,* n. 1.

In February 2012, ten months after the underlying lawsuit was filed, TRC tendered the 2011 Complaint to Burlington demanding a defense as an additional insured under the policies issued to Sound Glass.  Dkt. 16 at 2-3.  Burlington denied coverage based on the allegations in the complaint, an examination of extrinsic evidence, and their interpretation of the language in the additional insured endorsement.  *Id.*  This is the denial at issue.

The allegations in the 2011 Complaint and the relevant policies at issue in this case will be discussed below.

---

[1] In 2010 TRC tendered defense to Burlington in another matter.  Keenan Hopkins Suder & Stowell Contractors, Inc. ("KHSS") filed suit against TRC ("2010  Complaint") for payment on a contract to make stucco repairs. Dkt. 16 at 1-2.  TRC answered and brought a counterclaim against KHSS (who was the original stucco contractor on the project), and a third-party complaint against Sound Glass, alleging construction defects on the project.  *Id*.  Sound Glass tendered the third-party complaint to Burlington and Burlington accepted defense under a reservation of rights.  *Id*.  Then, TRC also tendered defense of the 2010 Complaint to Burlington as an additional insured under policies Burlington issued to Sound Glass and demanded a defense. *Id*. at 2. Based upon the allegations of the 2010 Complaint, Burlington found denial of the tender was appropriate.  *Id*.  However, after reviewing extrinsic evidence, namely an engineering report sent by TRC, to determine coverage, Burlington concluded that the extrinsic evidence also did not support coverage.  *Id*.  The aforementioned tender and denial of tender are not at issue in this suit.

## III.   DISCUSSION

The central question raised by this motion is whether Burlington has a duty to defend TRC as an additional insured under the policies Sound Glass holds with Burlington for claims alleged in a 2011 damages lawsuit filed against TRC. All other claims for which TRC seeks summary judgment depend in large part on the Court's analysis and conclusion as to this issue. The remaining claims will be addressed in the latter part of this order.

**A.   Summary Judgment Standard**

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When a properly supported motion for summary judgment has been presented, the adverse party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e). Rather, the non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 256.

**B.   Summary Judgment on Duty to Defend**

Summary judgment is appropriate on the issue of whether Burlington has a duty to defend because "the interpretation of language in an insurance policy is a matter of law." *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 423–24 (1997); *see also Woo v. Fireman's*

*Fund Ins. Co.*, 161 Wn.2d 43, 52 (2007) ("Interpretation of an insurance contract is a question of law"). A court is to "construe the language of an insurance policy ... [by] giv[ing] it the same construction that an 'average person purchasing insurance' would give the contract." *Woo*, 161 Wn.2d at 52 (*quoting Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682 (1990)).

### 1.  Duty to Defend

The duty to defend "is broader than the duty to indemnify." *Woo*, 161 Wn.2d at 52. The duty to defend "arises at the time an action is first brought, and is based on the potential for liability." *Id.* (*quoting Truck Ins. Exch. v. VanPort Homes Inc.*, 147 Wn.2d 751, 760 (2002)). "An insurer has a duty to defend 'when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" *Woo*, 161 Wn.2d at 52–53 (*quoting Truck Ins.*, 147 Wn.2d at 760). An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is "clearly not covered by the policy." *Id.* (*citing Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561(1998)). Moreover, if a complaint is ambiguous, a court will construe it liberally in favor of "triggering the insurer's duty to defend." *Id.* (*citing R.A. Hanson Co. v. Aetna Ins*. Co., 26 Wn. App. 290, 295 (1980)). In contrast, the duty to indemnify "hinges on the insured's actual liability to the claimant and actual coverage under the policy." *Hayden*, 141 Wn.2d at 64. In sum, the duty to defend is triggered if the insurance policy conceivably covers the allegations in the complaint, whereas the duty to indemnify exists only if the policy actually covers the insured's liability.

The insurer must investigate the claim, that is, consider facts outside the complaint, if (1) coverage is not clear from the face of the complaint but may nonetheless exist, or (2) the allegations are in conflict with facts known to or readily ascertainable by the insurer, or the allegations of the complaint are ambiguous or inadequate. *Truck Ins.*, at 276. However, "[t]he insurer may not rely on facts extrinsic to the complaint to deny the duty to defend−it may do so only to trigger the duty." *Woo*, 161 Wn.2d at 54 (*citing Truck Ins.,* 147 Wn.2d at 761).

**2.     Application of Duty to Defend Standard**

TRC argues that Burlington has a duty to defend it in connection with the 2011 Complaint as an additional insured under the policies Sound Glass held with Burlington. Burlington argues that it has no duty to defend TRC, based on the allegations in the 2011 Complaint, its review of extrinsic evidence, its interpretation of the language of the additional insured endorsement, as well as the temporal restrictions in the policies.

**a.     2011 Complaint**

The 2011 Complaint contains a number of allegations of deficient workmanship and negligence by TRC, but mentions none by Sound Glass or any other subcontractor. Dkt. 10-6. It does, however, alleged:

> 3.3     On or about August 3, 2006, Defendant commenced work on the building project. Defendant subsequently contracted with various subcontractors and suppliers to perform work and supply materials for the building construction project.
> * * *
> 3.6     The deficient workmanship and materials caused property damage that includes, but is not limited to, drywall, insulation, carpeting, fasteners, metal framing, exterior gypsum sheathing, metal lathing, and weep screeges, in addition to the defects and property damage which likely

>commenced at the time of construction and which remain ongoing, which were latent, all of which has resulted in loss of use of the building, and property damage from the date of construction through present date and ongoing into the future until remedied.
>    3.7   In 2009, warranty work failed to remedy all the defects and property damage.

*Id*. at 3-4.

### b. Relevant Policy Sections

Each of the Burlington policies held by Sound Glass contains an endorsement narrowing the temporal scope of the insuring agreement:

>We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>    This insurance applies to "bodily injury" and "property damage" only if . . . [t]he "bodily injury" and "property damage," whether known or unknown to any person:
>       (a) Did not first occur prior to the inception date of the policy;
>       (b) Was not in the process of occurring, as of the inception date of the policy; and
>       (c) Was not in the process of settlement, adjustment, "suit" or other proceeding of any kind (including but not limited to, any repair attempts or any statutorily mandated loss resolution or pre-suit process) as of the inception date of the policy.

Dkt. 17 at 17. This language is from the May 2008 to May 2009 policy. The language is substantially the same in each of the policies. *See, e.g.,* Dkt. 10-5 at 67 (May 2010 – May 2011 policy).

The insurance policies in effect from 2007-2009 also contain identical additional insured endorsement, which reads in relevant part:

ORDER - 7

1    WHO IS AN INSURED (Section II) is amended to include as an
    insured the person or organization shown in the schedule, but only with
2    respect to liability arising out of "your work" for that insured by or for you.
    It is agreed that such insurance as is afforded by this policy for the
3    benefit of the Additional Insured shall be primary insurance, and any other
    insurance maintained by the Additional Insured shall be excess and non-
4    contributory, but only as respects any claim, loss or liability arising out of
    the operations of the Named Insured, and only if such claim, loss or
5    liability is determined to be solely due to the negligence or responsibility of
    the Named Insured.

Dkt. 9 at 9.

### c.     Burlington's Duty to Defend

Burlington argues that the clear language of the policy indicates that the "Additional Insured" (TRC) will be covered "only if such a claim, loss or liability is determined to be solely due to the negligence or responsibility of the Named Insured" (Sound Glass). Dkt. 15 at 5-6. Burlington further asserts that while it knows that Sound Glass is one of TRC's subcontractors, in the 2011 Complaint, Sound Glass is not specifically named. Dkts. 15 at 6-7 & 10-6. Burlington argues that the complaint may have been sufficient to trigger TRC's own insurance policies, but it is not sufficient to trigger Burlington's policy as an additional insured because the complaint does not allege that Sound Glass, Burlington's named insured, was responsible in any way for the alleged deficiencies, let alone that it was "solely" responsible. Dkt. 15 at 6-7.

Additionally, although Burlington contends that the complaint itself establishes that it had no duty to defend, its review of extrinsic evidence, including a 2009 engineering report (which focused on the work of a stucco contractor) supports that it has no duty to defend TRC. Dkt. 15 at 8-9 (*citing* Dkt. 16 at 3 & 28).

1    TRC argues that the 2011 Complaint is silent as to which of the various
2 contractors may be liable and thus leaves open the possibility that Sound Glass was one
3 of the various subcontractors who was responsible for the alleged damages; in fact, TRC
4 points out that it submitted what it considered as evidence of Sound Glass's defective
5 work to Burlington, a fact not in dispute.  *See* Dkt. 18 at 9-11 (*citing* Dkts. 19-1 at 4-7, 9-
6 45, 19-2 at 1-17 & 19-3).
7    The parties clearly have conflicting views of the extent or existence of Sound
8 Glass's liability as demonstrated by their conflicting interpretations of extrinsic evidence.
9 While the complaint itself may indeed be sufficient to establish that Burlington has a duty
10 to defend TRC, conflicting extrinsic evidence regarding the amount of liability, if any,
11 attributable to Sound Glass or another subcontractor will be decided by the trier of fact.
12 Based on the evidence now before it, the Court decides whether Burlington has a duty to
13 defend.  In arriving at this decision, extrinsic evidence cannot be used to deny the duty to
14 defend, only to trigger it.  *Woo*, 161 Wn.2d at 54.  Thus, given the conflicting
15 interpretations of extrinsic evidence regarding what, if any, liability exists on the part of
16 Sound Glass, the Court concludes that, on the basis of the complaint and the extrinsic
17 evidence, Burlington has a duty to defend TRC.  However, the Court's analysis does not
18 end there, as the Court must address whether or not the policy language impacts
19 Burlington's duty to defend.
20    Under a plain language reading of Burlington's policies, TRC asserts that
21 Burlington's central argument that it has no duty to defend because the complaint does
22

not alleges that Sound Glass is "solely" responsible for the damages is unreasonable.

Dkt. 9 at 18-19. In relevant part, TRC argues:

> [T]he plain language of the Additional Insured Endorsement establishes three things: First, the Additional Insured Endorsement establishes who qualifies as an Additional Insured: "Any person or organization with whom you have agreed, in a written contract, that such person or organization should be added as an additional insured on your policy…."
> Second, the Additional Insured Endorsement establishes that the Burlington Policies provide primary coverage: "It is agreed that such insurance as is afforded by this policy for the benefit of the Additional Insured shall be primary insurance…" [footnote omitted].
> Third, the Additional Insured Endorsement establishes whether other insurance maintained by Additional Insured is automatically rendered excess and non-contributory to Burlington's primary coverage: [footnote omitted]
> …any other insurance maintained by the Additional Insured shall be excess and non-contributory, but only as respects any claim, loss or liability arising out of the operations of the Named Insured, and only if such claim, loss or liability is determined to be solely due to the negligence or responsibility of the Named Insured.
> Accordingly, if: (a) the Additional Insured has other insurance; and (b) the Named Insured is determined to be solely liable for the loss; then (c) the Additional Insured's other insurance will automatically be rendered excess and non-contributory to Burlington's primary coverage. On the other hand, if: (a) the Additional Insured has other insurance; and (b) the Named Insured is not determined to be solely liable for the loss; then (c) the Additional Insured's other insurance will not be automatically rendered excess and non-contributory to Burlington's primary coverage.

*Id.* The Court agrees with TRC's analysis and finds its interpretation of the language of the policy reasonable.[2] Burlington's duty to defend its additional insured is not conditioned upon the existence of other insurance maintained by TRC; nor is it

---

[2] Even if the additional insured endorsement could be reasonably interpreted another way, Washington law requires that the policy be construed in favor of the insured. *See State Farm & Casualty v. English Cove Association, Inc.*, 121 Wn. App. 358, 363 (2004).

conditioned upon a determination that Sound Glass is solely liable. Dkt. 9 at 20. The endorsement simply provides that other insurance maintained by TRC is automatically rendered *excess* and non-contributory to Burlington's primary coverage.

As TRC argues, Burlington's interpretation of the additional insured endorsement renders Burlington's duty to defend illusory and therefore unreasonable. Dkt. 9 at 20-21 & *see Quadrant Corp. v. American States Ins. Co.,* 154 Wn.2d 165, 184-85 (2005) (insurance policies must be construed to avoid rendering contractual obligations illusory). Burlington's argument that it has no duty to defend is grounded in its interpretation of the additional insured endorsement, which discusses the determination of the extent of loss and liability of the named insured. The final determination of the named insured's loss and liability has no bearing on a insurer's duty to defend in the first instance. As TRC put it:

> (a) a determination concerning the extent of the Named Insured's liability necessary requires a resolution / adjudication of the underlying claim; and (b) a resolution / adjudication of the underlying claim leaves nothing left to defend. Thus, Burlington's interpretation of the Additional Insured Endorsement (as "applying" only once a loss is determined to be solely due to the negligence or responsibility of the Named Insured) renders Burlington's duty to defend illusory….

Dkt. 9 at 20-21.

To deny that it has a duty to defend, Burlington also relies on the temporal limitations set out in the policies, which narrow the temporal scope of the insuring agreement and restrict the application of the policies' coverage to bodily injury or property damage that:

> (a) Did not first occur prior to the inception date of the policy;

    (b) Was not in the process of occurring, as of the inception date of the policy….

Dkt. 17 at 17.  Burlington argues that the effect of this provision is to "limit coverage to one policy, the one in effect when the property damage begins."  Dkt 15 at 5.  In this case, Burlington states that "under the terms of the 2011 Complaint, property damages likely began sometime between May 2007 and May 2008 or May 2008 and May 2009."  *Id*.  Without further explanation, Burlington asserts "when the 2011 complaint is viewed in light of the language of these policies, it is clear that Burlington had no duty to defend TRC against the 2011 Complaint."  *Id*.

  Contrary to Burlington's assertion, it is clear to the Court that Burlington has a duty to defend TRC against the 2011 Complaint.  Under its own analysis, the temporal restrictions set out in Burlington's policies would at least trigger coverage under the policy "in effect when the property damages beg[an]."  Dkt. 15 at 5.  Although the inception date of damages may be uncertain on the face of the complaint, Burlington admits that TRC was an additional insured under its policies during all periods damages were alleged to have occurred.  *Id*.  Further, the inception date of the damages, like the extent of Sound Glass's liability, resulting from work performed by them, is an issue for the trier of fact to decide.  Burlington fails to show that a genuine issue of material fact exists as to whether it properly declined to defend TRC against the 2011 Complaint.  Summary judgment in favor of TRC is granted as to Burlington's duty to defend.

C.  **Other Claims**

TRC seeks summary judgment on its claims that Burlington acted in bad faith and violated the IFCA. TRC also argues that it is entitled to attorney fees and damages for Burlington's IFCA violations.

   1.  **Bad Faith**

An insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded. *See St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130 (2008) (*quoting Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485 (2003)). In this case, the Court concludes that Burlington acted in bad faith because it breached its duty to defend and its reason for doing so, its interpretation of its own policy, was unreasonable.

   2.  **IFCA Violations**

An insured violates the IFCA by "failing to disclose to first party claimants all pertinent benefits coverages or other provisions of an insurance policy or insurance contract under which a claim is presented." RCW 48.30.015(5)(b) & WAC 284-30-350.

TRC alleges that "Burlington never disclosed the existence of the new additional insured endorsement in the 2010-11 Burlington Policy, much less coverage available under that new additional endorsement…." Dkt. 9 at 28. Additionally, TRC observes that Burlington did not cite the temporal limitation of the policy as an explanation for denying TRC coverage until Burlington submitted its opposition brief. Dkt. 18 at 13. Burlington does not point to any evidence in the record that contradicts these assertions. TRC argues that the exclusion of citations to portions of the policies and the reliance that

Burlington now puts on them, demonstrates Burlington violated IFCA's requirement to fully inform first party claimants of the provisions of the policy under which a claim is presented. *Id.*

Burlington does not show that it disclosed the temporal restriction section of the policy in response to TRC's February 2012 tender of the 2011 Complaint. It indicates only that its "language is found in substantially the same form in each policy. Dkt. 15 at 4 n. 1. Burlington argues only that their denial was reasonable, and that the IFCA statute applies only when an insurance company "unreasonably" denies coverage. Dkt. 15 at 12. Burlington's denial was unreasonable. Therefore, TRC is entitled to summary judgment on this issue.

An insured also violates IFCA by "failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or the offer of a compromise settlement." RCW 48.30.015(5) & WAC 284-30-330.

TRC alleges that Burlington violated IFCA because it "failed to provide a reasonable explanation of the basis in Burlington Policies in relation to Washington law for repeatedly denying TRC a defense for two years." Dkt. 9 at 27. TRC's continued assertion Burlington has "repeatedly denied TRC coverage for two years" is not accurate insofar as it relates to Burlington's denial of coverage for the allegations in the 2011 Complaint. *See supra,* n. 1. The 2011 Complaint was filed in April of 2011; TRC tendered defense to Burlington in February 2012; and on April 10, 2012, Burlington declined to defend TRC. Given this timeline, while Burlington may have been prompt in

their denial, as discussed above, Burlington did not provide a reasonable explanation of the basis for their denial. Summary judgment on this issue is granted.

### 3. Attorneys Fees

Under RCW 48.30.015(3), the Court:

> shall, after a finding of unreasonable denial of a claim for coverage or payment of benefits, or after a finding of a violation of a rule in subsection (5) of this section, award reasonable attorneys' fees and actual and statutory litigation costs, including expert witness fees, to the first party claimant of an insurance contract who is the prevailing party in such an action.

TRC is entitled to an award of attorneys fees because the Court found Burlington's denial of its TRC's tender unreasonable.

### 4. Damages

Under RCW 48.30.015(2), the Court:

> may, after finding that an insurer has acted unreasonably in denying a claim for coverage or payment of benefits or has violated a rule in subsection (5) of this section, increase the total award of damages to an amount not to exceed three times the actual damages.

RCW 48.30.015(5) includes violations for WAC 284-30-330 and 284-30-350. The Court has found Burlington violated both provisions. Because the full extent of TRC's actual damages will not be established until a judgment is entered in the underlying lawsuit, TRC asks this Court to determine the total award of damages at that time. Dkt. 9 at 28. The Court, therefore, reserves ruling on the total award of damages until the time the underlying lawsuit is finally resolved.

### 5. Other Relief Sought

Finally, TRC asks this Court to find that Burlington is estopped from denying it coverage because of its bad faith conduct. Dkt. 9 at 7. However, this issue is not thoroughly briefed, and the Court cannot determine whether summary judgment in favor of TRC on this issue is appropriate. Therefore, the parties shall submit additional briefing on whether, as a result of this Court's finding that Burlington acted in bad faith, the insurance company is estopped from denying TRC coverage. TRC's initial brief is due by January 4, 2013, Burlington must respond by January 11, 2013 and, if TRC chooses to file a reply, it must do so by January 18, 2013.

## IV. ORDER

Therefore, it is hereby **ORDERED** that:

1. TRC's motion for summary judgment is (Dkt. 9) is **GRANTED in part** as to all claims and remedies sought, excepting its request that Burlington be estopped from denying it coverage; and

2. The parties must submit additional briefing on the estoppel issue in compliance with the dates the Court has set forth above.

Dated this 17th day of December, 2012.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge