1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TIM RYAN CONSTRUCTION, INC.,

Plaintiff,

v.

BURLINGTON INSURANCE
COMPANY,

Defendant.

CASE NO. C12-5770 BHS

ORDER GRANTING
PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY
JUDGMENT

12

13

14

15

16

17

18

19

20

21

22

This matter comes before the Court on its order granting in part Plaintiff Tim Ryan Construction, Inc.'s ("TRC") partial motion for summary judgment (Dkt. 9) and requesting briefing on the remedy of coverage by estoppel. Dkt. 22. The Court has considered the pleadings filed in support of and in opposition to the portion of the motion seeking remedy by estoppels, and the remainder of the file. For the reasons stated herein, the Court grants the motion for partial summary judgment.

## I.    PROCEDURAL HISTORY

On August 28, 2012, TRC filed a lawsuit against Burlington Insurance Company ("Burlington") alleging: (1) breach of contract by Burlington's refusal to defend TRC in an April 11, 2011 lawsuit filed against it; (2) that Burlington acted in bad faith and

1   violated numerous provisions of the Insurance Fair Conduct Act ("IFCA"); and (3) that

2   Burlington committed violations of the Consumer Protection Act, Chapter 19.86 RCW.

3   Dkt. 1 at 6-7.   On October 8, 2012, Burlington filed an answer to TRC's complaint and a

4   counterclaim seeking declaratory judgment that Burlington has no duty to defend TRC in

5   the April 11, 2011 lawsuit ("underlying lawsuit"), and that Burlington has no duty to

6   indemnify TRC in the underlying lawsuit.  Dkt. 8 at 6-7.  It also seeks costs and

7   disbursements incurred herein.  *Id.*  On October 18, 2012, TRC filed a motion for partial

8   summary judgment.  Dkt. 9.  On October 22, 2012, TRC filed an answer to Burlington's

9   answer and counterclaim.  Dkt. 10.  On November 5, 2012, Burlington filed a response to

10  TRC's motion for partial summary judgment.  Dkt. 15.  On November 9, 2012, TRC filed

11  a reply to Burlington's response.  Dkt. 18.

12       On December 17, 2012, the Court issued an order granting in part TRC's motion

13  for partial summary judgment.  Dkt. 22.  The Court found, in part, that Burlington

14  breached its duty to defend TRC as an additional insured under a policy Burlington held

15  with Sound Glass Sales, Inc. ("Sound Glass"), a TRC subcontractor on a project that is a

16  subject of the underlying lawsuit, and that Burlington acted in bad faith in doing so.  *See*

17  *id*.  In the same order, the Court requested further briefing from the parties to determine

18  whether it should grant the remedy of coverage by estoppel because Burlington acted in

19  bad faith.  *Id.* at 16.

20        On December 31, 2012, Burlington filed a motion for reconsideration of the

21  Court's order, arguing that it was manifest error of law for the Court to find Burlington's

22

1  conduct was unreasonable as a matter of law and thus it acted in bad faith.  *See* Dkt. 25.

2  Burlington did not contest the Court's determination that it has a duty to defend TRC. *Id*.

3        On January 18, 2013, TRC filed its opening brief on the estoppel remedy.  Dkt. 30.

4  On February 1, 2013, Burlington responded in opposition.  Dkt. 37.  On February 20,

5  2013, TRC filed a reply brief.  Dkt. 42.  On February 25, 2013, Burlington filed a

6  surreply.  Dkt. 45.

7        On March 22, 2013, after consideration of further briefing by both parties on the

8  issue of bad faith, the Court denied Burlington's motion for reconsideration, thus the

9  finding that it acted in bad faith remains.  Dkt. 48.  Therefore, the Court now takes up the

10  issue of whether a grant of coverage by estoppel is an appropriate remedy.

11  

## II.    FACTUAL BACKGROUND

12        Burlington is an insurance company incorporated in North Carolina and authorized

13  to conduct business in Washington.  Dkts. 1 at 2 & 8 at 1.  TRC is a general contractor

14  for the construction of a commercial building located at 555 Pacific Avenue, Bremerton,

15  Washington (the "Project").  Dkt. 1 at 3.  TRC retained various contractors, including

16  Sound Glass Sales, Inc. ("Sound Glass") to work on the Project.  Dkt. 1 at 3 & 8 at 2.

17  Burlington issued commercial general liability policies to Sound Glass between May 1,

18  2007 and May 1, 2011.  Dkts. 1 at 2 & 8 at 1.  The policies issued to Sound Glass had

19  "additional insured" endorsements.  Dkt. 16 at 3.  It is undisputed that TRC is covered as

20  an additional insured under Burlington's policies with Sound Glass.  TRC tendered

21

22

defense to Burlington (Dkt. 1) in connection with the underlying  lawsuit[1] filed in Kitsap County by the owner of the Project against TRC.  Dkt. 1 at 3. The action is captioned *Tim Ryan Properties, L.P.*[2] *v. Tim Ryan Construction, Inc.*, No. 11-2-00870-5.  *Id.*  This action arose from defective construction of the property that was also the subject of a 2010 Complaint filed against TRC.  Dkt. 16 at 2-3.  *See supra,* n. 1.

In February 2012, ten months after the underlying lawsuit was filed, TRC tendered the 2011 Complaint to Burlington demanding a defense as an additional insured under the policies issued to Sound Glass.  Dkt. 16 at 2-3.  Burlington denied coverage based on the allegations in the complaint, an examination of extrinsic evidence, and their interpretation of the language in the additional insured endorsement.  *Id.*  This is the denial of the duty to defend which is at issue in this case.

---

[1] In 2010 TRC tendered defense to Burlington in another matter.  Keenan Hopkins Suder & Stowell Contractors, Inc. ("KHS&S") filed suit against TRC ("2010  Complaint") for payment on a contract to make stucco repairs. Dkt. 16 at 1-2.  TRC answered and brought a counterclaim against KHS&S (who was the original stucco contractor on the project), and a third-party complaint against Sound Glass, alleging construction defects on the project.  *Id.*  Sound Glass tendered the third-party complaint to Burlington and Burlington accepted defense under a reservation of rights.  *Id.*  Then, TRC also tendered defense of the 2010 Complaint to Burlington as an additional insured under policies Burlington issued to Sound Glass and demanded a defense. *Id*. at 2. Based upon the allegations of the 2010 Complaint, Burlington found denial of the tender was appropriate.  *Id.*  However, after reviewing extrinsic evidence, namely an engineering report sent by TRC, to determine coverage, Burlington concluded that the extrinsic evidence also did not support coverage.  *Id.*  Plaintiff did not file the instant action for breach of duty to defend and bad faith in relation to the 2010 tender and denial thereof.

[2] Tim Ryan Properties is hereinafter referred to as "TRP."

# III. DISCUSSION

**A.      Legal Standards**

   **1.      Summary Judgment**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

1  issues of controversy in favor of the nonmoving party only when the facts specifically

2  attested by that party contradict facts specifically attested by the moving party.  The

3  nonmoving party may not merely state that it will discredit the moving party's evidence

4  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

5  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

6  nonspecific statements in affidavits are not sufficient, and missing facts will not be

7  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

8        **2.**    **Remedy for Bad Faith**

9        If the insured acted in bad faith, there is a presumption of harm.  *Mutual of*

10  *Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 161 Wn.2d 903 (2007) (*citing Safeco*

11  *Insurance Co. of America* v. *Butler*, 118 Wn.2d 389, 394 (1992)). "[T]he insurer can

12  rebut the presumption by showing by a preponderance of the evidence its acts did not

13  harm or prejudice the insured." *Id*.  The remedy for the harm with respect to the duty to

14  defend is compensation for the harm caused thereby and estoppel as to policy defense to

15  the claim.  *Ledcor Industries, Inc. v. Mutual of Enumclaw Ins., Co*., 150 Wn. App. 1, 10

16  (2009).

17        When the insurer breaches the duty to defend in bad faith, the insurer should be

18  held liable not only in contract for the cost of the defense, but also should be estopped

19  from asserting the claim is outside the scope of the contract and, accordingly, that there is

20  no coverage.  *Id*.  (*quoting Kirk v. Mt. Airy Ins. Co*., 134 Wn.2d 558, 564 (1998)

21  (citations omitted)).  The coverage by estoppel remedy creates a strong incentive for the

22

ORDER - 6

1   insurer to act in good faith, and protects the insured against the insurer's bad faith

2   conduct. *Id*.

3   **B.    Application of Standards**

4           TRC argues throughout its briefing that Burlington has an "almost impossible

5   burden" to rebut the presumption that TRC has not been harmed by Burlington's bad

6   faith. *See, e.g.,* Dkt. 30 at 1-4.  TRC maintains that it was harmed in six ways. *See* Dkt.

7   30. Burlington argues that all of the TRC alleged bases of harm are without merit, devoid

8   of evidentiary support and contradicted by actual evidence before the Court. Dkt. 37 at

9   13.  Each is addressed in turn.

10          **1.    Arbitration Demand**

11          TRC argues that Burlington's refusal to defend TRC in the November 2010

12  arbitration demand harmed it by precluding an early and significantly less expensive

13  resolution of the construction defect claims that are the subject of the underlying lawsuit.

14  *Id*.

15          Burlington argues that TRC does not explain how Burlington's failure to "defend"

16  any contemplated arbitration led TRP to instead pursue a lawsuit, or how the defense

17  provided by TRC's primary insurers was somehow ineffective in achieving whatever

18  objective TRC sought to accomplish.  Dkt. 37 at 14.  Moreover, Burlington maintains, the

19  only issue in this case relates to its response to TRC's tender of defense in the underlying

20  lawsuit. *Id*. Any failure to respond to some alleged tender of a contemplated arbitration is

21  not properly before this Court. *Id*.

22

1    TRC replies that the undisputed records show that the owner of the Project made

2    an arbitration demand on November 5, 2010 for property damage stemming from the

3    construction defects that now serves as the basis for the underlying lawsuit. Dkt. 42 at 7.

4    TRC maintains that TRC tendered defense to Burlington on November 10, 2010, and

5    Burlington acknowledged TRC's tender of the arbitration demand on November 22, 2011

6    but denied having a duty to defend "based on an interpretation of the Additional Insured

7    Endorsement [sic] this Court found to be unreasonable." *Id.* (citing Dkt. 10, Exs. M &

8    N).

9        In granting TRC's motion for partial summary judgment (Dkt. 9), the Court

10   determined that Burlington breached its duty to defend and did so in bad faith based on

11   its conduct in relation to the February 16, 2012 tender of the underlying lawsuit to

12   Burlington.  Dkts. 22 (Order Granting In Part Plaintiff's Motion for Partial Summary

13   Judgment) & 48 (Order Denying Defendant's Motion for Reconsideration of the Order

14   Granting Partial Summary Judgment).  TRC did not challenge these rulings.  The Court

15   issued no ruling regarding whether Burlington acted in bad faith when it declined to

16   defend TRC in connection with the November 2010 arbitration demand.  Although TRC

17   argues that it has been harmed by Burlington's failure to defend in connection with that

18   demand, it provides no case law supporting its position that such conduct constitutes

19   harm where the Court has made no determination that Burlington wrongfully refused to

20   defend TRC in connection with that demand.  Harm is presumed where the insurer acted

21   in bad faith. *Dan Paulson Construct. Inc.*, 161 Wn. 2d at 922.  Here, the Court has

22   determined that Burlington acted in bad faith with regard to its denial of the February

2012 tender.  Logically, TRC cannot establish that it incurred harm as a result of its

November 2010 tender of the arbitration demand to Burlington, where there has been no

finding that it acted in bad faith prior to February 2012.  Therefore, the Court concludes

that TRC has not suffered any harm on this basis.

### 2.    Early Resolution of Underlying Lawsuit

TRC maintains that after the underlying lawsuit was filed, the owner of the

Project made a settlement demand, which would have released TRC from liability to the

owner for the construction defects in the underlying suit and Burlington's refusal to

defend harmed TRC by precluding it from this early, less expensive resolution. *Id.*

Burlington argues that TRC references a settlement offer from TRP dated October

20, 2011[3] and asserts, without explanation, that the underlying lawsuit could have been

settled if Burlington had been defending at that time.  Dkt. 37 at 14. However, the

settlement offer, referencing not only the underlying lawsuit but the 2010 lawsuit that is

not at issue in this case, predates TRC's tender to Burlington by four months. *Id.*

Therefore, Burlington maintains, "as a matter of law, the breach by TBIC could not have

occurred until sometime after February 16, 2012 (the date TRC tendered the Underlying

Lawsuit to TBIC)."  *Id.* (*citing Mutual of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d

411, 421 (2008) ("breach of the duty to defend cannot occur before tender") (citations

and quotations omitted)).

---

[3] *See* Dkt. 32 at 27.

1    In its reply, TRC argues that Burlington's duty to defend under Washington law

2    encompasses the pursuit of counterclaims/third party claims that are reasonably related to

3    the defense of the construction defect claims alleged in the underlying lawsuit, including

4    those asserted in the KHS&S lawsuit that seek to reduce and/or eliminate TRC's liability

5    in the underlying lawsuit.  Dkt. 42 at 4 (*citing Western v. Riley, P.S. v. Westport Ins.*

6    *Corp.*, 2011 WL 887552 at *23 (W.D. Wash. March 14, 2011)).  TRC contends that

7    Burlington has conceded that TRC's counterclaims & third-party claims in the KHS&S

8    lawsuit are factually related.  *Id.* at 5, n. 10.  TRC claims "Burlington has failed to present

9    any evidence rebutting the presumption that TRC was harmed by Burlington's refusal to

10   pursue the construction defect counterclaims/third party claims encompassed in

11   Burlington's duty to defend." *Id*.

12   In its surreply, Burlington argues that TRC raises the issue of the KHS&S lawsuit

13   for the first time in its reply brief; therefore, any declarations and attachments relating to

14   it should be stricken. The Court agrees with Burlington on this issue. The district court

15   need not consider arguments raised for the first time in a reply brief.  *Zamani v. Carnes*,

16   491 F.3d 990, 997 (9th Cir. 2007).  Although the Court notes reference to the 2010

17   lawsuit in TRC's complaint as well as other pleadings, TRC submitted no legal argument

18   in their opening brief on estoppel directly addressing the KHS&S lawsuit; nor does that

19   brief mention it.  In its opening brief on estoppel, TRC simply fails to argue, or put at

20   issue, what it does in its reply brief: that Burlington's duty to defend encompasses the

21   pursuit of counterclaims/third party claims that are reasonably related to the defense of

22   the construction defect claims alleged in the underlying lawsuit, including those asserted

1    in the KHS&S lawsuit that seek to reduce and/or eliminate TRC's liability in the

2    underlying lawsuit.  Dkt. 42 at 4.  Therefore, the Court will not consider these arguments

3    and strikes reference to them, as well as the Declaration of Gregory A.V. Clark and the

4    twenty exhibits attached thereto regarding the KHS&S lawsuit.  Dkt. 43 & 43-1 to 43-20.

5    **3.    Ability to Obtain Insurance**

6    TRC argues that Burlington's refusal to defend harmed TRC because it was forced

7    to tender the construction defect claims to its own primary insurers, Scottsdale and

8    Century, and now has a reported loss history, which has and will continue to impact their

9    ability to obtain insurance.  *Id.* at 6 (*citing* Dkt. 31 at 1-2 (Declaration of Daniel Ryan)

10   (listing six insurers who have declined to provide insurance to TRC due to their reported

11   loss history)).

12   Burlington argues that there is no evidence to suggest its initial declination of

13   TRC's tender in the underlying action had anything to do with its alleged ability to obtain

14   insurance.  Dkt. 37 at 14-15. Burlington observes that TRC tendered the underlying

15   lawsuit to its own insurers (Scottsdale and Century Indemnity) long before it ever

16   tendered the underlying lawsuit to Burlington.  *Id.* at 15.  Based on Burlington's 30(b)(6)

17   depositions, it shows these primary insurers had already defended and settled with TRC

18   for $1,000,000 before TRC tendered the underlying lawsuit to Burlington in February

19   2012.  *Id.* and Dkt. 38 at 42).  Thus, Burlington maintains that "it is logically impossible

20   to claim that TBIC's response to the February 2012 tender influenced conduct that

21   occurred before February 2012."  *Id.* at 15.

22

1    In its reply, TRC argues that Burlington has failed to dispute the fact that TRC

2    now has a reported loss history which harms TRC in its ability to obtain insurance.

3    The Court disagrees with TRC.  Any suggestion that TRC "was forced" to tender

4    its claims to defense to Scottdale and Century (Dkt. 37 at 6) before it tendered the

5    underlying lawsuit to Burlington has no bearing on whether Burlington's denial of the

6    duty to defend caused harm to TRC.  Dkt. 37 at 6.  Burlington correctly observes that

7    TRC's tender and settlement with those primary insurers took place before TRC tendered

8    its complaint in the underlying suit to Burlington, as settlement with those insurers took

9    place in November 2011.  *See* Dkt. 31 at 1-2 (Declaration of Daniel Ryan).  Moveover, it

10   is unreasonable to assume that even if Burlington has been tendered and accepted the

11   defense, TRC would not also have tendered defense to its own primary insurers.

12   Therefore, the harm, if any, experienced by TRC in its inability to obtain insurance

13   before it tendered the complaint to Burlington in February 2012, cannot have been *caused*

14   by Burlington's initial bad faith denial of its duty to defend TRC, as it predates TRC's

15   February 2012 tender.  Although TRC claims ongoing harm due to its allegedly forced

16   tender to its primary insurers and resulting reported loss history, it fails to argue that

17   Burlington's 2012 initial failure to provide a defense caused this ongoing harm.

18   Therefore, the Court finds no harm on this basis.

19       **4.    Harm to Reputation**

20   TRC claims that Burlington's refusal to defend has harmed TRC's reputation and

21   business operations because a general contractor's business is based on negotiated

22   contracts generated by its reputation in the community, which is impacted by the

1  construction defect claims in the underlying lawsuit that remain unresolved.  *Id*. at 6-7.

2  Through a sworn declaration, TRC provides one example from June 2012,[4] when it was

3  competing with other general contractors over a contract with a medical provider to

4  construct a medical facility. Dkt. 30 at 7 (*citing* Dkt. 31 at 2-3 (Declaration of Daniel J.

5  Ryan)). TRC indicates that the medical provider asked many questions concerning the

6  underlying lawsuit, even though the medical provider had been a long-time client of

7  TRC.  *Id*.

8         Furthermore, TRC argues that it is frequently required to provide a "Contractor's

9  Qualification Statement" when TRC competes for a construction contract.  *Id*.   The

10  "Contractor's Qualification Statement" requires that TRC disclose whether there "[a]re

11  any judgments, claims, arbitration proceedings or suits pending or outstanding against

12  your organization or its officers."  *Id*.   TRC maintains the very fact that it is required to

13  disclose that the construction defect claims in the underlying suit remain pending only

14  further harms TRC's reputation and potential business opportunities. *Id*.

15         Burlington argues TRC does not identify any specific harm.  Dkt. 30 at 15. It

16  further argues that any claimed "harm" from having to reveal the pendency of the

17  underlying lawsuit was caused by the original filing of the complaint in that action in

18  ───────────────

19     [4] TRC's brief indicates that the meeting with the medical provider occurred in June 2011.
20  Dkt. 30 at 7.  However, the declaration of Daniel Ryan, which it cites for that date, actually
    indicates that the meeting took place in June 2012. Dkt. 25 at 2. Based on its reading of TRC's
21  brief, rather than the supporting declaration, Burlington attempts to argue that its failure to
    defend from February 2012 to October 2012 did not trigger TRC's June 2011 client inquiries, as
22  the meeting predated the tender. Burlington relied on incorrect dates; therefore, its argument is
    without merit.

ORDER - 13

April 2011.  *Id.*  At that time, Burlington argues, the 2010 construction defect lawsuit was already pending, and the decision to file the underlying suit was made by the same members of the Ryan family who own and operate both TRC and TRP.  *Id.* at 15-16.  Thus, Burlington maintains, if the filing of the underlying lawsuit caused some perceived harm to TRC, the Ryan family members could have prevented it.[5]  *Id.* at 16.  Moreover, Burlington contends, the suggestion that the mere pendency of the underlying lawsuit is causing harm to TRC, and that such harm could somehow be remedied by Burlington's involvement, is belied by TRC's current unwillingness to allow Burlington to defend TRC in the underlying lawsuit.  *Id.*  Therefore, Burlington concludes, there is simply no basis for TRC's assertion that it initial declination of defense in the underlying lawsuit, in which TRC has been represented at all times, has caused harm to TRC's reputation and business opportunities.  *Id.*

---

[5] In this case, Burlington suggests that the two companies, whose partners, directors, officers or employees, share ownership interests in both TRC and TRP, either do not conduct business at arm's length or at least their familial relations and ownership interests suggest that their conduct with regard to the initiation or continuation of the underlying suit between TRP and TRC is legally suspect. *See* Dkt. 37 at 2-7 (*citing* Dkt. 38 (30(b)(6) of Deposition of Daniel J. Ryan) at 23-27, 29-30, 37, 40, 43-44, 49, 51, 54, 57). TRC maintains that the business between the two companies is done at arm's length.  Dkt. 42 at 12-13 (*citing* Dkt. 38 at 11-15).  It further asserts that the two companies are not controlled or operated by the same people, with Tim Ryan controlling TRP and having no operational control over TRC and Daniel Ryan and Kevin Ryan controlling TRP.  *Id.*  Although the relationships and ownership interests cast suspicion on both the motivation of the two parties in relation to the underlying suit and of TRC's in this suit, there is not sufficient evidence before this Court to determine whether TRC and TRP have or are perpetuating some fraud, collusion or other type of illegality in connection with the present matter.  Although Burlington clearly maintains something to that effect, it did not plead such conduct as a part of its counter-claims, defenses or otherwise.  *See* Dkts. 37 & 8. Nor has TRP been joined as a party to this action.

TRC argues that Burlington has not presented any evidence disproving the harm it asserted.  Dkt. 42 at 10.  TRC maintains that the harm to TRC's reputation and business opportunities was established by evidence presented by TRC.  *Id.*  However, TRC also asserts that burden properly rests with Burlington to show that TRC's reputation and business opportunities have not been harmed; it is not TRC's burden to affirmatively show harm. *Id.*  Therefore, TRC concludes that Burlington has failed to satisfy its burden by presenting any evidence disproving the legal presumption of harm to TRC's reputation and business opportunities.  *Id.*

Burlington is correct that TRC has provided no affirmative evidence of actual harm to its reputation or business opportunities resulting from Burlington's bad faith conduct.  Yet, Burlington never cites any case law to support its position that TRC must do so.  Nor has the Court found any. This Court acknowledges that under existing case law it is difficult to determine what type of showing is required of the insured in the present context.  Nonetheless, existing case law clearly establishes that the burden falls to the insurer to rebut the presumption of harm and articulates the policy reasons why this is so: the presumption is necessary in order to avoid saddling the insured with the "almost impossible burden of proving that he or she is demonstrably worse off because of the insurer's actions."  *Butler*, 118 Wn.2d 383, 390 (1992).

In keeping with the policy articulated under Washington law, the Court concludes that TRC does not have to provide evidence that it is "demonstrably worse off."  *Butler*, 118 Wn.2d at 390. To require TRC to provide such affirmative evidence of harm would appear to invert the standard set forth in *Butler*.  According to the speculative, though

1  uncontroverted evidence, the pendency of the underlying lawsuit is harming TRC's

2  reputation and business.  Had Burlington supplied some evidence in an attempt to rebut

3  the presumption of harm, it may have succeeded.  For example, had Burlington shown

4  that, in the instances where TRC had to submit the Contractor's Qualification Statement,

5  the pending lawsuit had little to no impact on a client's determination of whether to

6  accept TRC's bid, then Burlington would likely have demonstrated at least a genuine

7  issue of material fact as to whether TRC's claim that the pendency of the underlying suit

8  has harmed its business or reputation.  However, Burlington has failed to do so.

9         That disputed facts exist involving whether TRC would allow Burlington to

10 participate in its defense of its underlying lawsuit after it denied the tender in bad faith

11 has no bearing on this particular issue of harm.  *See, e.g.*, Dkt.  37 at 7-8.  TRC is simply

12 not required to allow Burlington to step in and defend TRC once it breached its

13 contractual duty to defend.  *See* Dkt. 42 at 10 (*citing Downs v. Smith*, 169 Wn.2d. 203,

14 206 (1932) ("[O]ne who has himself breached a contract cannot thereafter enforce the

15 contract against the other party."); *Rosen v. Ascentry Technologies, Inc*., 143 Wn.App.

16 364, 369 (2008) ("A party is barred from enforcing a contract that it has materially

17 breached."); *see also* Dkt. 42 at 11, n. 30 (*citing Sanderson v. Ohio Edison Company,* 69

18 Ohio St.3d 582, 586, 635 N.E.2d 19 (1994) ("Similarly, where an insurer unjustifiably

19 refuses to defend an action, leaving the insureds to fend for themselves, the insureds are

20 at liberty to make a reasonable settlement without prejudice to their rights under the

21 contract. By abandoning the insureds to their own devices in resolving the suit, the

22

1    insurer voluntarily forgoes the right to control the litigation[6] and, consequently, will not

2    be heard to complain concerning the resolution of the action in the absence of a showing

3    of fraud, even if liability is conceded by the insureds as a part of settlement

4    negotiations.”))

5        Under Washington law, when the Court finds harm in its coverage by estoppel

6    analysis, the insured is entitled to compensation resulting from that harm. *Ledcor*, 150

7    Wn. App. at 10 (remedy for the harm with respect to the duty to defend is compensation

8    for the harm caused thereby and estoppel as to policy defense to the claim). Therefore,

9    TRC will be permitted to seek compensation for harm to its reputation and business

10   opportunities either by motion or at trial, wherein the amount of damages will have to be

11   proven.

12       **5.     Fees Incurred in Coverage Action**

13       At the request of TRC in its motion for partial summary judgment, the Court

14   granted attorney fees under RCW 48.30.015(3).  In its motion, TRC argued that:

15

16   _____

17       [6] In its surreply, Burlington asks this Court to strike TRC’s new argument made for the
     first time in its reply brief that Burlington is trying to control the litigation.  Dkt. 45 at 3.

18   Although the Court has reviewed TRC’s argument and citation to cases involving the issue of
     control, it finds that TRC is not making a new argument regarding control. Rather, TRC is

19   responding to what it views as Burlington’s contention that it has a right to participate in the
     defense of the underlying suit, which TRC interprets as Burlington’s attempt to control that case.

20   Thus, TRC argues that Burlington has no right to participate in the litigation and the cases
     involving “control” support that contention. There is no evidence to suggest that Burlington is

21   attempting to control the defense in the underlying case. However, the Court finds persuasive at
     least some of TRC’s citation to cases involving the issue of control to support its contention that

22   sound policy reasons exist for denying Burlington’s participation in TRC’s defense.  For those
     reasons, TRC’s arguments regarding control will not be stricken.

> [A]n award of attorneys' fees is mandatory upon a finding that an insurer violated IFCA.[7]  *See* RCW 48.30.015(3).  Having established that Burlington violated IFCA Burlington is liable for TRC's attorneys' fees and costs incurred in this action in an amount to be determined by post-ruling motion or hearing.

Dkt. 9 at 29.  After finding that Burlington violated IFCA, the Court ruled "TRC is entitled to an award of attorneys fees because the Court found Burlington's denial of [sic] TRC's tender unreasonable."  Dkt. 22 at 15.

For those attorney fees that may not be covered by RCW 48.30.015(3), as TRC argued in its initial summary judgment motion, attorney fees under *Olympic Steamship* are available.  Dkt. 9 at 28.  *See Olympic Steamship Co., Inc. v. Centennial Ins. Co.*, 117 Wn.2d 37, 53 ("[A]n award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefits of his insurance contract, regardless of whether the insurer's duty to defend is at issue").  TRC argued that Burlington, having forced TRC to assume the burden of legal action to obtain the coverage benefits to which it was entitled, is liable for TRC's attorneys' fees and costs incurred in this action in an amount to be determined by subsequent motion or hearing. Dkt. 9 at 28-29.

Burlington argued in its response to TRC's motion for partial summary judgment that:

---

[7] Insurance Fair Conduct Act ("IFCA").

> Attorney fees pursuant to *Olympic Steamship* are … unavailable because TBIC agreed to defend TRC under a reservation of rights. *See Ledcor*, 150 Wn. App. at 16. Moreover, TBIC's indemnity obligation is not at issue and it is premature to address attorney fees on that basis.

Dkt. 15 at 12. At that time, the Court did not address an award of fees under the *Olympic Steamship* doctrine. *See* Dkt. 22. The Court deems it appropriate to consider whether an award of such attorney fees under that doctrine is available here.

An award of fees under *Olympic Steamship* is appropriate in cases where coverage is at issue. *Leingang v. Pierce County Medical Bureau, Inc*., 131 Wn.2d 133 (1997). Because the motion before the Court involves coverage by estoppel, coverage is at issue. As TRC properly observes,

> [A]n award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefits of his insurance contract, regardless of whether the insurer's duty to defend is at issue.

*Olympic Steamship Co.*, 117 Wn.2d at 53. Despite Burlington's contentions, the present case is distinguishable from *Ledcor* with respect to the award of attorney fees under *Olympic Steamship*. In *Ledcor*, the insurer, Mutual of Enumclaw ("MOE"), accepted coverage well before Ledcor (who was an additional insured under a subcontractor's insurance policy) initiated a lawsuit against them; the insurer admitted coverage in its answer; and it did not force Ledcor to litigate the issue of coverage. *Ledcor*, 150 Wn. App. at 16. In contrast, Burlington agreed to defend under a reservation of rights in October 2012, approximately seven months after TRC tendered its complaint to it and, approximately two months after this lawsuit was filed; it also denied coverage in its answer, and essentially forced TRC to litigate coverage. Given the foregoing, attorney

1  fees under *Olympia Steamship* are available to TRC for the defense expenses occurred in

2  the instant action.  The amount and extent of fees will be determined post-judgment and

3  upon a motion by TRC.

4       Because TRC is entitled to an award of attorneys' fees in connection with this

5  action, the Court finds that TRC has no cognizable, uncompensated harm for the

6  purposes of determining coverage by estoppel.  *National Union Fire Ins. Co. v.*

7  *Greenwich Ins. Co.*, 2009 WL 1794041 at 6 (W.D. Wash June 22, 2010) (insurer rebuts

8  presumption of harm by showing complete "absence of cognizable, uncompensated

9  harm").

10      **6.**    **Other Defense Expenses**

11       TRC contends that it has incurred substantial defense fees because of Burlington's

12  bad faith conduct, including by its failure to defend after TRC tendered an arbitration

13  demand in a 2010 lawsuit that is factually related to the 2011 underlying lawsuit.  Dkt. 30

14  at 4.

15       It is undisputed that TRC tendered defense to Burlington on February 16, 2012,

16  ten months after the underlying lawsuit was filed.  Prior to its tender to Burlington, TRC

17  tendered defense to its primary insurers, Scottsdale Insurance Company and Century

18  Surety Company, and settled with them in November 2011.  Dkt. 31 at 1 (Declaration of

19  Daniel J. Ryan).  Any defense fees expenses incurred by TRC prior to its February 2012

20  tender of the underlying lawsuit do not constitute harm caused by Burlington's bad faith

21  refusal to defend because breach of the duty to defend cannot occur before tender.  *See*

22

*USF Ins. Co.*, 164 Wn.2d at 421 ("breach of the duty to defend cannot occur before tender").

Additionally, TRC claims that it was harmed because, after Burlington wrongfully refused to defend TRC when it denied its February 2012 tender in the underlying lawsuit, TRC incurred additional defense costs in defending itself against the construction defense claims that are the subject of the underlying lawsuit. *Id*. at 5 (*citing* Dkt. 32 at 1-2 (Supplemental Declaration of Jason Donovan)).

Among other arguments, Burlington maintains that TRC suffered no actual harm in connection with the defense fees incurred in the underlying lawsuit. In part, Burlington argues that TRC, like the insured in *Ledcor*, was represented by competent counsel who aggressively defended TRC's interests. Dkt. 37 at 10 -11.  In support of its argument, Burlington provides the following quote:

> In *Ledcor*, the underlying litigation was actively moving forward without a defense from MOE, and the insurer's liability for its "unpaid defense obligation" totaled over $100,000. *Id*. at 7. Nevertheless, the *Ledcor* court found an absence of harm warranting bad faith damages because the insured "was represented at all times by competent counsel who aggressively defended [the insured's] interests and with whom [the insured] never expressed dissatisfaction."

*Id*.  Like Ledcor, Burlington observes that TRC expressly admits that it was entirely satisfied with the representation it has received in underlying lawsuit. *Id*. at 11 & 38 at 37, 40, 41, 43, 44, and 45.  Thus, according to Burlington, the undisputed evidence is that, as in *Ledcor*, TRC was "represented at all times by competent counsel who aggressively defended [TRC's] interests and with whom [TRC] never expressed dissatisfaction." *Id*. at 11 (*citing Ledcor*, 150 Wn. App. at 7).

1      TRC argues, however, that this case is distinguishable from *Ledcor*.  Dkt. 42 at 8-

2   9.  Unlike the present case, TRC argues that in *Ledcor*, the insured suffered no harm as a

3   result of the insurer's bad faith refusal to defend because the insured had been

4   represented by other insurer-appointed counsel throughout the entire underlying action.

5   *Id*. (*citing Ledcor*, 150 Wn.App. 1). Thus, in contrast to the present case, the insured

6   never incurred any defense fees from defending itself.  *Id*.

7      Although TRC points out that in *Ledcor* the insured appears to have been

8   represented by insurer-appointed defense counsel throughout the underlying litigation,

9   nothing in the opinion indicates the court's conclusion that Ledcor suffered no harm for

10   the purposes of coverage by estoppel was based in any way on whether Ledcor was

11   represented by insurer-appointed, rather than self-appointed, defense counsel.  *See*

12   *Ledcor*, 150 Wn. App. at 11. When the Washington State Court of Appeals reviewed the

13   trial court's decision in *Ledcor* and affirmed its determination that the insured was not

14   harmed by MOE's bad faith and thus coverage by estoppel did not apply, the underlying

15   action had already been resolved.  *See Ledcor*, 150 Wn. App. 1.  In *Ledcor*, the trial court

16   found that MOE had breached its contractual duty to defend and awarded the insured

17   over $100,000 (plus prejudgment interest) for Ledcor's unpaid defense obligation in the

18   underlying lawsuit.  *Id*. at 6.  Further, in rendering its decision, the appellate court

19   considered a number of factors, such as whether Ledcor received what it was entitled to

20   under the policy; whether it was represented by competent counsel who aggressively

21   defended its interests and with whom Ledcor never expressed dissatisfaction; that Ledcor

22

1    never intended to involve MOE until it had solicited contributions from other insurers,

2    and until after the underlying action was resolved. *Id.* at 11.

3         The case before us does not have the same procedural posture as *Ledcor*. Here,

4    the underlying lawsuit is ongoing, and this case currently proceeds before a trial court.

5    However, those facts do not render *Ledcor* inapplicable for the purposes of determining

6    whether TRC was harmed by incurring defense fees in the underlying action.  First, TRC

7    can move the Court for reimbursement of its defense expenses in connection with

8    Burlington's breach of contract.  Second, the Court finds that TRC is entitled to coverage

9    by estoppel, so it will receive at least what it is entitled to under the policy.  *See infra.*

10   Third, TRC does not dispute that it has been represented by competent defense counsel

11   who aggressively defended its interests in the underlying lawsuit, nor has it expressed

12   dissatisfaction with its counsel.  Fourth, although belatedly, Burlington accepted tender of

13   TRC's defense, and it stands ready to step in and defend TRC, regardless of whether

14   TRC chooses to permit such.  Therefore, for the purpose of coverage by estoppel, the

15   Court concludes that TRC has not been harmed by the defense fees that it has incurred in

16   the underlying action.

17   **C.   Scope of Coverage by Estoppel**

18        TRC asserts in a footnote that it would be premature for the Court to rule on the

19   scope of Burlington's coverage until the underlying lawsuit is resolved. Dkt. 42 at 2, n. 1.

20   However, it provides no legal argument supporting its assertion.

21        Burlington maintains that "estoppel does not operate to create coverage." Dkt. 17

22   (*citing Ledcor*, 150 Wn.App. at 11). Thus, Burlington argues, where an additional insured

1   tenders a claim based on derivative liability from the named insured's work, any

2   coverage by estoppel only applies to the claim arising from the named insured's work,

3   and not from work by any other contractors. *Id.*  In support of its position, Burlington

4   cites to an unpublished case in this district, which states:

5           Washington courts have held that even where an insurer acted in bad faith
            in defending a claim, a general contractor is not entitled to indemnification
6           under a particular subcontractor's policy from liability caused by other
            wrongdoers because estoppel does not operate to create coverage. Here,
7           even if the Court assumed that defendants acted in bad faith, defendants
            would only have a legal obligation to pay if the damage caused was
8           attributable to [the named subcontractor's] work.

9   *Ballard Condominium Owners Assoc., v. General Security Indem. Co. of Arizona*, 2010

10  WL 4683721 at *5 (W.D. Wash. November 12, 2010) (*citing Ledcor*, 150 Wn.App. at

11  11).

12          When the insurer "breaches the duty to defend in bad faith, the insurer should be

13  held liable not only in contract for the cost of the defense, but also should be estopped

14  from asserting the claim is outside the scope of the contract and, accordingly, that there is

15  no coverage." *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 564 (1998) (citations omitted).

16  "In such a situation any claim that should have been defended, but was not, will create

17  liability for the insurer to pay at least policy limits." *Id.* at 564.

18          In this case, because the Court has found that TRC has been harmed by

19  Burlington's denial of TRC's tender of defense in the underlying suit, it must necessarily

20  conclude that Burlington is estopped from denying coverage to TRC as an additional

21  insured under Burlington's policy with Sound Glass. *Kirk*, 134 Wn.2d at 564. Thus,

22

1   Burlington is liable for damages in the underlying lawsuit to the extent allowable under

2   its policy with Sound Glass.  *See id.*

3                               **IV. ORDER**

4        Therefore, it is hereby **ORDERED** that TRC's motion for partial summary

5   judgment is **GRANTED**; TRC is entitled to coverage by estoppel as set forth in this

6   order.

7        Dated this 25th day of April, 2013.

8

9

10  BENJAMIN H. SETTLE
    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22